The appellant, Patrick Carr, an inmate at West Jefferson Correctional Facility, was indicted for the murder of Correctional Officer William E. Donaldson, a capital offense as defined in Ala. Code 1975, § 13A-5-40(a)(5). A jury found him guilty as charged and unanimously recommended that his punishment be life imprisonment without possibility of parole. The trial judge rejected the jury's recommendation and sentenced the appellant to death. This direct appeal is from that conviction and sentence.
 I
The appellant contends that the State's evidence was insufficient for the jury to convict him of the charged offense because "no reasonable trier of the facts could have found that he had the intent to commit a capital murder." Appellant's brief at 69.
The trial court made the following findings of fact regarding the crime and the appellant's participation:
 "On January 12, 1990, the defendant, Patrick Carr, was an inmate at West Jefferson Correctional Facility serving concurrent 10 year sentences for Escape and Theft of Property First Degree. Because of a dispute with another inmate in an adjacent cell, the defendant was ordered to pack his belongings and move from Cell No. 42 to another cell. He was verbally abusive to the guards, refused to obey their commands and was passively resistant to the move. Officers then carried Inmate Carr and his belongings to Cell No. 61. Cell No. 61 was empty when the defendant arrived. A search of defendant's belongings during the move failed to discover a weapon that the inmate had concealed in his belongings.
 "Less than one hour later Officer Donaldson and Officer Robert Coleman were escorting nurse Jackie King from cell to cell as she dispensed medication to certain inmates. Carr was scheduled to receive medication and when his cell door was opened he threw coffee on the guards. The door was opened wider and Officer Donaldson started into Carr's cell. As he entered the cell, Officer Donaldson was stabbed three times by Patrick Carr with a handmade pick-like weapon. This weapon was approximately 10 inches long and 1/4 inch in diameter. It was sharpened on one end and the handle was made by wrapping cloth around the other end of the pick. Officer William E. Donaldson died as a result of these wounds." C.R. 62.
In two statements given the evening of Donaldson's death, the appellant admitted that he was "real mad" about being moved from his original cell, that he had a "feeling" the officers would come back to his cell, and that he took his handmade "pick" from its hiding place in his mattress and put it in his boot next to the door of his new cell. He admitted swinging his "pick" at Donaldson three times but claimed he was defending himself.
After the incident, the appellant told another inmate, "I had all the time in the world to do what [I] wanted to do, but I missed him. . . . [I] tried to stab him in the heart, but got him in the neck." R. 884-85. The appellant was seen laughing in the prison infirmary as Officer Donaldson was being evacuated in a medical helicopter. R. 834. *Page 1067 
 " ' "The role of appellate courts is not to say what the facts are. Our role . . . is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury." Ex parte Bankston, 358 So.2d 1040, 1042 (Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches "a clear conclusion that the finding and judgment are wrong." Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962). "The rule is clearly established in this State that a verdict of conviction should not be on the ground of the insufficiency of the evidence to sustain the verdict, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it was wrong and unjust." Bridges v. State, 284 Ala. 412, 420, 225 So.2d 821
(1969). Even though an appellate court should "marvel that a jury would convict upon such flimsy proof," it is "not permitted to pass upon the weight or sufficiency of the evidence, where it may yield any rational inference of guilt." Toles v. State, 170 Ala. 99, 100, 54 So. 511 (1911). A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345
(1909). "[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense." Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).' Granger [v. State], 473 So.2d [1137] at 1139 [(Ala.Cr.App. 1985)]." ' "
White v. State, 546 So.2d 1014, 1017 (Ala.Cr.App. 1989).
The State's evidence was clearly sufficient to require the submission to the jury of the issue of intent. The jury was presented with testimony from which it could rationally conclude that the appellant was lying in wait for the officer and intentionally caused his death.
 II
The appellant, who was 19 1/2 years old at the time of the offense, alleges that he was never informed of his right to be treated as a youthful offender. That allegation is not supported by the record. The following occurred at arraignment:
 "[DEFENSE COUNSEL]: And also like to make known we do not wish to waive application for Youthful Offender. We will make that application at a later date. I believe he was under the age of twenty-one at the time of this incident.
"THE COURT: All right.
 "[DEFENSE COUNSEL]: He was under the age of twenty and we will be making application for Youthful Offender. But we felt the motion for [mental] examination should proceed first before any other motions were made.
 "THE COURT: [Defense Counsel], I will show a plea of not guilty and not guilty by reason of mental disease or defect received. I will grant your motion for mental examination of the defendant and I will give you leave to file any other motions that you feel appropriate in this case and set a cut-off date of June 1." Supp.R. 4-5.
On September 24, 1993, the trial judge entered an order to correct or modify the record, reflecting that "[t]he provisions of the Youthful Offender Act were made known to the defendant and no application for Youthful Offender treatment was made." Supp.C.R. 9.
 III
The appellant argues that the trial court erred in denying his motion for change of venue.
Officer Donaldson was killed on January 12, 1990. Five years earlier, the appellant had been adjudicated a juvenile delinquent based on conduct that had caused the death of Officer Myron Massey, who had been named the "Fairfield Police Officer of the Year." The appellant claims that community-wide familiarity with the details surrounding Officer Massey's death, coupled with defense counsel's alleged inability to question the prospective jurors about whether they knew of the appellant's involvement in Massey's death, prevented him from receiving *Page 1068 
a fair trial in Bessemer for Donaldson's murder.
On the first day of voir dire examination of the prospective jurors, one veniremember stated, out of the hearing of the other jurors, that because of her husband's acquaintance with the appellant's stepfather, she knew of the appellant's involvement in the death of Officer Massey. That juror was excused for cause. Defense counsel argued that there might be other jurors who knew of the appellant's involvement with Massey's death who had not come forward with that information. He maintained that there was no way for him to question the jurors regarding their knowledge of the Massey case without prejudicing the jurors against the appellant. He insisted that the only remedy was moving the location of the trial.
We do not agree. Although it is true that "[t]he smaller the community, the more likely a major crime will be imbedded in the public consciousness," People v. Ainsworth, 45 Cal.3d 984,248 Cal.Rptr. 568, 755 P.2d 1017, 1027 (1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1006 (1989), the trial court was not required, in the absence of any showing, to assume either that the prospective jurors knew of the appellant's involvement in the prior murder or that, if they did know, they were prejudiced against him.
The appellant was not convicted of murdering Officer Massey; he was adjudicated a juvenile delinquent based on his involvement in Massey's death. Therefore, his connection with Massey's death could not legitimately be made public. See Ala. Code 1975, § 12-15-101(c) ("Whoever . . . directly or indirectly discloses or makes use of or knowingly permits the use of information concerning a [delinquent] child . . . shall be guilty of a misdemeanor"). The appellant introduced no evidence to indicate that his prior juvenile adjudication relating to Massey's death was ever the subject of media publicity or the object of community attention. Compare Peoplev. Bailey, 169 Mich. App. 492, 426 N.W.2d 755, 756 (1988) (distribution of leaflets in small community stating that accused, who was facing trial for kidnapping/murder of 13-year-old boy, "ha[d] twice been convicted of crimes involving young boys and twice given probation — and now — [the victim] is dead. It could be your child!").
The Massey homicide occurred five years before the Donaldson homicide and seven years before the appellant's trial. In the absence of any showing to the contrary, it can be assumed that the passage of time between the Massey homicide and the appellant's trial served to dim the communal memory of the earlier offense. See Thomas v. State,539 So.2d 375, 392 (Ala.Cr.App.), affirmed, 539 So.2d 399 (Ala. 1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 709
(1989) ("[t]he passage of time between the crime and its accompanying publicity and the actual trial of the defendant cannot be ignored as a factor in bringing objectivity to the trial").
Finally, we do not accept the appellant's argument that "it [was] almost impossible . . . to ask questions to ferret out those people that knew of the [appellant's involvement in the Massey murder]." R. 72. On the second day of voir dire examination, defense counsel asked, "Has anybody learned of anything that they didn't know yesterday about this case from outside sources? . . . Maybe a relative called you, or [a] family member came in, or a friend or someone talked to you about something about this case." R. 273. That inquiry prompted responses from three jurors who had knowledge of the Massey case. All three of those jurors were excused for cause. Defense counsel could have further inquired whether any veniremembers had any information about the appellant that would tend to prejudice them against him. Although he was given the opportunity to ask the jurors any question he wished, defense counsel did not address such an inquiry to them or request that the court do so.
To be entitled to a change of venue, a defendant must "show to the reasonable satisfaction of the court that a fair and impartial trial and an unbiased verdict cannot be reasonably expected in the county in which the defendant is to be tried." Rule 10.1(b), A.R.Crim.P.
 "To establish the existence of prejudice against a defendant sufficient to justify a change of venue, specific facts and circumstances must be established to indicate *Page 1069 
that it will be practically impossible to obtain an impartial jury to try the case, and such a showing may not be based on speculation. Kennedy v. State, 472 So.2d 1092, 1095 (Ala.Cr.App. 1984), aff'd, 472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985)."
Mullis v. State, 545 So.2d 205, 208 (Ala.Cr.App. 1989) (emphasis added). The burden was upon the appellant to showactual prejudice against him, not the mere possibility of prejudice. Hart v. State, 612 So.2d 520, 527 (Ala.Cr.App.), affirmed, 612 So.2d 536 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993). The appellant did not meet that burden. The mere speculation that some jurorsmight have known of his involvement with Officer Massey's death was insufficient to entitle him to a change of venue.
 IV
The appellant claims that his trial counsel was incompetent because counsel did not make an effective Batson motion challenging the prosecutor's peremptory strikes of black veniremembers. After the jury was struck, the following occurred:
 "THE COURT: The make-up of the jury as it currently exists is . . . five black males, one black female, five white males, and three white females.
 "[DEFENSE COUNSEL]: Judge, the Batson argument would be . . . that the prosecution struck black men and white women who were opposed — who had some convictions against the death penalty. That is the only — they had to strike those people because this is a death penalty case.
 "So in essence they struck blacks, all blacks and white people who had some reservations against the death penalty. White females that had — I think there [were] some white males also that had reservations. They left some whites on [the jury who] had reservations about the death penalty.
 "THE COURT: I will find — anything else, [defense counsel], I'm sorry?
"[DEFENSE COUNSEL]: That's all.
 "THE COURT: I will find the defendant has failed to make out a prima facie case for a violation of what has been referred to as Batson. I will give you an exception to my ruling." R. 330-31 (emphasis added).
After the trial, the court appointed new counsel to represent the appellant on appeal, and appellate counsel filed a motion for new trial. That motion contained the mere allegation, unsupported by any facts, that the appellant's trial counsel was ineffective. Supp.C.R. 1 (Motion for New Trial). The court entertained argument on the motion but appellate counsel did not present any evidence. Appellate counsel's argument included the following rather confusing statements regarding trial counsel's alleged ineffectiveness relating to the Batson issue:
 "We would also raise ineffective assistance regarding the Batson motion that defense counsel made. The Batson motion is not actually the Batson
motion. The way that he argued that motion had nothing to do with Batson or any other of the cases that followed.
 "Rather, the way counsel argued that motion was based on the belief in the capital punishment rather than arguing Batson." Supp.R. 6-7 (Motion for New Trial).
Appellate counsel now claims on appeal that trial counsel was ineffective because:
 "[h]e did not preserve a record for review as to how many blacks were on the venire, what percentage of the venire was black, or any other pertinent information at all. It may have been that the State Prosecutor used every one of his peremptory strikes to exclude blacks from the jury. There is no way to know since defense counsel failed to record any of the information that could be useful in reviewing the effect of race-based peremptory strikes used by the State Prosecutor." Appellant's Brief at 52.
We note that appellate counsel also had the opportunity, at the hearing on the motion for a new trial, to "preserve a record for review as to how many blacks were on the venire, what percentage of the venire was black, or any other pertinent information at all," but failed to do so. *Page 1070 
Nevertheless, pursuant to Rule 10(g), A.R.App.P., this court has obtained the jury venire list and the parties' strike sheets. Those documents reveal that there were 49 prospective jurors on the original venire, 17 of whom (34.7%) were black. Four black veniremembers were excused for cause. The prosecutor used 7 of his 14 strikes to eliminate black jurors. Of the 12 jurors and 2 alternates chosen for the appellant's trial, 8 were white and 6 were black. Excluding the alternates, the appellant's jury consisted of 7 whites and 5 blacks; consequently, blacks composed 41.7% of the jury.
The foregoing statistics do not alone establish a prima facie case of racial discrimination. See Harrell v. State,571 So.2d 1270, 1271 (Ala. 1990), cert. denied, 499 U.S. 984,111 S.Ct. 1641, 113 L.Ed.2d 736 (1991) (where venire was 35.7% black, prosecutor used five of eight peremptory challenges to strikes blacks, and trial jury was 41.7% black, statistical evidence alone did not establish a prima facie case of discrimination).
Trial counsel's allegation that the State struck blacks who were opposed to capital punishment but "left some whites on [the jury who] had reservations about the death penalty," R. 331, is not supported by the record. We have reviewed the voir dire examination of the jury and we can find no instance of the State's failing to strike a white person who expressed opposition to the death penalty.
On the basis of the record before us, including the parties' strike sheets, we conclude that a prima facie case of discrimination did not exist. The appellant has not provided any additional evidence that would raise an inference of intentional discrimination on the part of the prosecution. Consequently, he has failed to meet his burden of showing both that trial counsel's performance with regard to the Batson motion was deficient and that he was prejudiced thereby. See generally Strickland v. Washington, 466 U.S. 668,687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Howard v.State, 551 So.2d 1155, 1157 (Ala.Cr.App. 1989); Kinsey v.State, 545 So.2d 200, 202 (Ala.Cr.App. 1989).
 V
The appellant gave a statement to Investigator Harold Riley approximately one and one-half hours after the stabbing. He gave a second statement to Investigator Riley some four hours after giving the first statement. The appellant contends that these two statements were involuntary and, consequently, should not have been admitted in evidence.
With regard to the first statement, he claims that he was not fully informed of all the rights outlined in Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The transcript of the appellant's first statement reveals the following:
"H[arold] R[iley]: State your name.
"P[atrick] C[arr]: My name is Patrick Carr.
 "HR: Patrick, have you been advised of your constitutional rights to remain silent prior to going on the tape?
"PC: Yes sir.
 "HR: Do you understand that you have a right to remain silent and if you give up this right, excuse me just one minute, that any statement you give can and will be used against you, is that, do you understand that?
"PC: Yes sir.
"HR: Okay. Do you wish to tell me what happened?
"PC: Yes sir."
We agree that this exchange does not contain a complete statement of the constitutional rights guaranteed inMiranda. However, Investigator Riley testified that prior to turning on the tape recorder, he orally informed the appellant of all his Miranda rights by reading those rights from a pre-printed card, and he read that card at trial. R. 705, 713, 724. Riley's testimony was sufficient for the trial court to find that the appellant was fully informed of his rights. "Once the mandate of Miranda has been complied with at the threshold of questioning, it is unnecessary to repeat the warnings at the beginning of each successive interview." Davis v. State,401 So.2d 187, 189 (Ala.Cr.App.), cert. denied, 401 So.2d 190 (Ala. 1981). *Page 1071 
The appellant argues that his second statement was involuntary because it was induced by Investigator Riley's promise to provide him with medication he needed but had not yet received that evening. The transcript of the appellant's second statement reveals that after the appellant had given Investigator Riley a full account of the events culminating in the stabbing of Officer Donaldson, at the very end of the interrogation when Riley asked the appellant how he felt, whether he was "sick in any way" the following occurred:
 "HR: Do you have the flu or, or anything like that?
 "PC: No sir, one thing about my medication, my seizure medication, you know I ain't get that and that one thing I need right there [sic].
"HR: Okay.
"PC: My seizure medication.
 "HR: Alright we'll, we'll see that they take care of, they're made aware of it, okay.
 "PC: Okay. That one thing I need is my seizure medication."
Investigator Riley's assurance that he would see that the appellant received his medication did not constitute an inducement for the appellant's statement because Riley's assurance came after the appellant had given his statement. See Kuczenska v. State, 378 So.2d 1182, 1184 (Ala.Cr.App. 1979), cert. denied, 378 So.2d 1186 (Ala. 1980) (rejecting contention that accused was induced to confess by withholding medication from him, court noted that "[t]here [was] no testimony from anyone that appellant was told his medication would be withheld if he did not confess or that it would be returned if he did confess"). Compare Gilchrist v. State,585 So.2d 165, 179 (Ala.Cr.App. 1991) (rejecting contention that accused was induced to confess by promise of visits with his girlfriend, court observed that "[t]here was no testimony the defendant was told that, if he confessed, he would be allowed to see" his girlfriend) (emphasis in original); Stewart v.State, 562 So.2d 1365, 1373 (Ala.Cr.App. 1989) (rejecting argument that accused was induced to confess by threat of death penalty because accused made incriminating statements before interrogator made comment about electric chair); Riley v.State, 501 So.2d 551, 557 (Ala.Cr.App. 1986) (rejecting argument that accused was induced to confess by giving him non-jail food and by allowing him to telephone his wife, court noted that accused made incriminating statement before lunch and before telephone call).
The appellant also argues that both of his statements were involuntary because he had previously been knocked unconscious during the melee occurring after Officer Donaldson was stabbed and because he had not received his medication.
Although the evidence indicates that the appellant was forcefully subdued after the stabbing of Officer Donaldson, it is not clear whether the appellant was ever unconscious. Correctional Officer Samuel Hays, who remained with the appellant for ten minutes immediately after the stabbing, testified that he did not know whether the appellant was unconscious but that the appellant neither moved nor spoke during that time. R. 624-25. An inmate in a nearby cell testified that the appellant had been "knocked out," R. 883, but that he "came to" and said he "was all right." R. 884
After the appellant had been subdued, he was taken to the prison infirmary, where a nurse examined him for injuries. In one of the statements that he made later that night, the appellant told Investigator Riley that he had received medical treatment at the infirmary. The appellant acknowledged, "[T]hey look[ed] at me, the nurse put Band-Aids on me right there, you know, check[ed] all over my head, . . . she fixed me up, you know, side of my head . . . she put something on that." Thus, even if the appellant had been rendered unconscious earlier, it is undisputed both that he received treatment for his injuries and that he never complained to Investigator Riley that he felt too ill to answer questions. Riley testified that the appellant was "functioning well" at the time he gave his first statement, R. 719, and that his only complaint before the second statement was that he was cold.
The trial court was warranted in finding, under the totality of the circumstances, that the appellant's statements were voluntary, *Page 1072 
despite his injuries. See Klingel v. State, 518 So.2d 853, 856
(Ala.Cr.App. 1987) (statement of accused, "who had head injuries and a broken leg, and [who] was positioned in a wheelchair with an I.V. in his arm," determined to be voluntary under totality of circumstances); Thompson v. State,462 So.2d 777, 778-79 (Ala.Cr.App. 1984) (fact that accused's statement was made while he was in pain at hospital did not render confession involuntary).
On the day Officer Donaldson was killed, the appellant was due to receive phenobarbital and Dilantin, antiseizure medications that had been prescribed for him, at "pill call," which was about 5:00 p.m. The appellant's own conduct, which culminated in the death of Officer Donaldson, delayed his receipt of that medication.
The appellant made statements to Investigator Riley at 6:26 p.m. and at 10:26 p.m. R. 709, 733. He received his medication at 11:20 p.m. R. 858. Testimony at trial established that because of the "build-up of the [medicine]" in his system, the appellant would suffer no ill effects as a result of missing one dose. R. 857.
The record does not support the appellant's contention that the delayed administration of his medication had any effect on the voluntariness of his statements. See Griffin v. State,500 So.2d 83, 87-88 (Ala.Cr.App. 1986) (trial court's finding that accused's confession was voluntary upheld despite contention that accused was incarcerated without medication or medical attention following apparent suicide attempt); Myers v.State, 431 So.2d 1342, 1345 (Ala.Cr.App. 1982), cert. quashed,431 So.2d 1346 (Ala. 1983) (fact that accused may have been without epilepsy medication at time he confessed did not — under totality of circumstances, including fact that accused did not inform detective that he needed medication or was suffering effects of withdrawal — render confession involuntary).
We find no error in the action of the trial court in admitting into evidence the statements of the appellant.
 VI
At trial, State's witness Judith Salter testified that she was the nurse on duty when the appellant and Officer Donaldson were brought to the prison infirmary following Donaldson's stabbing. Salter stated that immediately after Donaldson was airlifted in a medical helicopter, she walked by an infirmary isolation room and saw the appellant "standing [there] laughing." R. 834.
At the time, the appellant did not object to Salter's testimony. On cross-examination, he elicited from Salter the fact that she had not told anyone about the appellant's laughter until she informed the prosecutor a week before the appellant's trial. As Salter left the witness stand, defense counsel requested a side bar conference and told the court that he had a motion to make outside the presence of the jury. After the testimony of the next witness, defense counsel moved for a mistrial on the ground that he had been "blind-sided" by Nurse Salter's "highly prejudicial" testimony. R. 861, 863. He argued that Salter's testimony related, in effect, a nonverbal statement by the appellant that had not been disclosed to the defense under the provisions of Rule 16.1, A.R.Crim.P. R. 861-62.
Defense counsel argued that if the prosecution had disclosed Nurse Salter's proposed testimony to him prior to trial, he could have prepared to effectively cross-examine her in several ways, namely, by checking the layout of the prison infirmary to determine whether Salter was in a position to have seen what she claimed to have seen, by investigating Salter's reputation for truth and veracity, or by calling an expert witness to testify that the appellant's laughter could be attributed to the appellant's not having received his medication. R. 861.
On appeal, the appellant does not contend that Salter's testimony was a "statement" subject to disclosure under Rule 16.1, A.R.Crim.P. Instead, he claims that Salter's testimony constituted exculpatory evidence which should have been disclosed to him, as a matter of constitutional law, based onBrady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963). *Page 1073 
We reject the argument that Nurse Salter's testimony constituted Brady material. As trial counsel recognized, the evidence was not, by any stretch of the imagination, favorable to the defense. Therefore, it did not fall within the ambit ofBrady.
We also reject the argument — made at trial but not on appeal — that the appellant's laughter, which was observed by Nurse Salter, constituted a nonverbal "statement" within the meaning of Rule 16.1, A.R.Crim. P., which should have been disclosed to the appellant prior to trial. Rule 16.1 mandates disclosure of
 "any written or recorded statements [or the substance of any oral statements] made by the defendant to any law enforcement officer, official or employee."
Although nonverbal conduct may constitute a "statement" for purposes of the hearsay rule, see Fed.R.Evid. 801(a) and Rule 801(a)(2), Proposed Alabama Rules of Evidence (A.L.I. 1993) (presently under consideration by the Alabama Supreme Court), our research has revealed no authority for the proposition that such conduct is equivalent to a "statement" for purposes of the discovery rules in criminal cases.
In United States v. Gaddis, 877 F.2d 605 (7th Cir. 1989), a prosecution for conspiracy to alter postal money orders, the prosecution introduced a money order, that had been altered by the accused's sister and sent to the accused in order to show that the accused had knowledge of the conspiracy. Objecting to the admission of the money order on the ground that the government had failed to produce the document under Rule16(a)(1)(A), Fed.R.Crim.P., which allows a defendant to inspect and copy "any relevant written or recorded statements made by the defendant," the accused claimed that his receipt of the money order was a "statement" made by him.
The Seventh Circuit Court of Appeals summarily dismissed that contention, implying that Rule 16, Fed.R.Crim.P., pertains only to verbal or written assertions by the accused:
 "The appellant's arguments are without merit. Exhibit 32 is not a statement by William. We cannot find in the record any instance when the government claimed, or even suggested, that William had written something on the postal money order. By its very words, Rule 16(a)(1)(A) is simply inapplicable to a document that does not contain a statement by a defendant."
United States v. Gaddis, 877 F.2d at 610.
Even if the appellant's laughter could be considered a "statement" for purposes of Rule 16.1 (and we hold that it cannot), it does not meet the further criterion for disclosure set out in Rule 16.1, namely, that it must have been directed at or "made to [a] law enforcement officer, official or employee." Leaving aside the question of whether Nurse Salter was a "law enforcement officer, official or employee," it is evident that the appellant's laughter was not directed at or to
Salter, but was merely observed by Salter. Compare UnitedStates v. Green, 548 F.2d 1261, 1267 (6th Cir. 1977) (statements made by accused to third party and overheard by federal agent were not discoverable because wording of Rule 16(a)(1)(A) required that only statements made by defendants to
government officials be disclosed).
The prosecution did not violate the trial court's discovery order by failing to disclose Salter's testimony and the appellant was not entitled to a mistrial.
 VII
The appellant maintains that the jury override provision of Ala. Code 1975, § 13A-5-47(e), is unconstitutional. He claims that the statute contains no guidelines for the sentencing judge to follow and that the statute violates the Eighth Amendment, particularly in a case where, as here, the jury unanimously recommends a sentence of life imprisonment without parole.
Sentencing by a jury is not constitutionally required.Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154,82 L.Ed.2d 340 (1984). Proffitt v. Florida, 428 U.S. 242, 251-52,96 S.Ct. 2960, 2966-67, 49 L.Ed.2d 913 (1976), and § 13A-5-47(e) set "out a standard of review for jury override that meets constitutional requirements." McMillian *Page 1074 v. State, 594 So.2d 1253, 1272-73 (Ala.Cr.App. 1991), remanded on other grounds, 594 So.2d 1288 (Ala. 1992). The argument that the jury override provision of § 13A-5-47(e) is constitutionally infirm because it allows for the "arbitrary and standardless" imposition of the sentence of death has been repeatedly rejected by the appellate courts of this state. See, e.g., Ex parte Jones, 456 So.2d 380, 381-83 (Ala. 1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985);McMillian v. State, 594 So.2d at 1272; Parker v. State,587 So.2d 1072, 1098 (Ala.Cr.App. 1991). See also Ex parte Giles,632 So.2d 577 (Ala. 1993) (holding that Ala. Const. § 11 "does not preclude judicial override of the jury's sentencing recommendation in a capital case").
The trial court's sentencing order reflects the fact that the court gave "consideration to the recommendation of the jury in its advisory verdict that the defendant be sentenced to life without parole." R. 65. The court, however, after independently weighing the aggravating and mitigating circumstances, determined that the aggravating circumstance outweighed the mitigating circumstances and chose not to accept the jury's recommendation. Constitutional and statutory provisions require no more.
 VIII
As required by Rule 45A, A.R.App.P., we have "searched the record" for "any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court" and have found no error which "has or probably has adversely affected the substantial right of the appellant."
As required by Ala. Code 1975, § 13A-5-53, we have reviewed the propriety of the imposition of the death penalty and have determined that death is the appropriate penalty in this case. We have searched the record of the sentence proceedings for "any error adversely affecting the rights of the defendant" and have found none. § 13A-5-53(a).
In sentencing the appellant to death, the trial judge found the existence of one aggravating circumstance: the capital offense was committed by a person under sentence of imprisonment, Ala. Code 1975, § 13A-5-49(1). R. 63. The trial court found the existence of one statutory mitigating circumstance: the appellant was 20 years old at the time of the offense, Ala. Code 1975, § 13A-5-51(7).
The trial court found the existence of three non-statutory mitigating circumstances: (1) the appellant "had seizures and was evaluated as being borderline to dull normal intelligence, with an IQ in the range from 75-85"; (2) the appellant "expressed remorse for his actions during his sentence hearing"; and (3) the appellant "is a product of a troubled childhood." C.R. 64. The trial court's findings regarding the aggravating and mitigating circumstances are supported by the evidence.
In determining that death is the proper sentence in this case, we find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. Ala. Code 1975, § 13A-5-53(b)(1). Our independent weighing of the aggravating and mitigating circumstances indicates that death is the proper sentence.
 "[T]he fact that there were four mitigating circumstances and only one aggravating circumstance does not indicate that a death sentence should not have been imposed.
 " 'The determination of whether the aggravating circumstances outweigh the mitigating circumstances and vice versa, is not a numerical one. See Alabama Code § 13A-5-48
(1975). It is based on the gravity of the aggravating circumstances compared to that of the mitigating circumstances.
 " 'This court has held that a finding of only one aggravating circumstance is sufficient to support a sentence of death, and we are of the opinion that it is sufficient to sustain the death penalty in this cause. See Keller v. State, 380 So.2d 926 (Ala.Cr.App. 1979).'
 "Murry v. State, 455 So.2d 53, 66-67 (Ala.Cr.App. 1983), rev'd on other grounds, 455 So.2d 72 (Ala. 1984). As stated by the Alabama Supreme Court in Ex parte Cook, 369 So.2d 1251, 1257 (Ala. 1978): *Page 1075 
 " 'We can readily envision situations where several aggravating circumstances may not be sufficient to outweigh only one mitigating circumstance and, on the other hand, where numerous mitigating circumstances may be present but opposed to one aggravating circumstance so outrageous as to justify the death penalty.'
 "We find this to be the case here. 'Few crimes so tear at the very fabric of our criminal justice system as does the intentional killing of one charged with and actively engaged in enforcing the law.' Anderson v. State, 457 So.2d 435, 445 (Ala.Cr.App.), aff'd, 457 So.2d 446 (Ala. 1984). Thus, the trial court acted correctly in giving great weight to the one aggravating circumstance. We agree with this finding."
Magwood v. State, 548 So.2d 512, 514 (Ala.Cr.App.), affirmed,548 So.2d 516 (Ala. 1988), cert. denied, 493 U.S. 923,110 S.Ct. 291, 107 L.Ed.2d 271 (1989).
We find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. § 13A-5-53(b)(3). See Harrell v. State, 470 So.2d 1303, 1309 (Ala.Cr.App. 1984), affirmed, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935,106 S.Ct. 269, 88 L.Ed.2d 276 (1985); Magwood v. State, 548 So.2d at 515.
The judgment of the circuit court is affirmed.
AFFIRMED.*
All Judges concur.
* Note from the Reporter of Decisions: On May 25, 1994, the Court of Criminal Appeals made the following entry on the docket sheet of this case:
 "Appeal Dismissed on motion of appellant's counsel (death of appellant). Certificate of Dismissal issued." *Page 1076 
 *Page 501