744 So.2d 404 (1996)
Lynda Lyon BLOCK
v.
STATE.
CR-94-0529.
Court of Criminal Appeals of Alabama.
March 8, 1996.
Opinion on Return to Remand September 26, 1997.
Rehearing Denied December 19, 1997.
Lynda Lyon Block, pro se.
Jeff Sessions and Bill Pryor, attys. gen., and Sandra Stewart, deputy atty. gen., for appellee.
COBB, Judge.
Lynda Lyon Block was indicted for the murder of Roger Lamar Motley, an Opelika police officer. Specifically, the appellant *405 was indicted under § 13A-5-40(a)(5), Code of Alabama 1975, which defines as a capital offense the "murder of any police officer ... while such officer ... is on duty, regardless of whether the defendant knew or should have known the victim was an officer ... on duty." The jury found the appellant guilty of capital murder and recommended the death penalty by a vote of 10 to 2. The trial judge sentenced the appellant to death.
This case is a companion case to Sibley v. State, [Ms. CR-93-1665, March 8, 1996] ___ So.2d ___ (Ala.Crim.App.1996). Like the appellant in Sibley, the appellant here proceeded pro se in her appeal of her conviction and failed to file a brief with this court. As it did in Sibley, the State requests that we remand this case to the circuit court for a hearing to determine whether the appellant fully understood the consequences of her waiver of appellate counsel and her failure to file a brief on appeal.
The reasoning set out in Sibley is applicable to this case. Because we agree with the State that it is unclear from the record that the appellant fully understood the consequences of her waiver of counsel and the failure to file a brief on appeal, this cause is remanded to the circuit court for a hearing. At the hearing, the circuit court shall fully inform the appellant of the dangers and possible disadvantages of waiving counsel on appeal and failing to file a brief in this case. Following the hearing the trial court shall make written findings as to whether the appellant knowingly and voluntarily waived her right to appellate counsel and whether she understood the consequences of failing to file a brief in this court. The return to this court shall include the written findings and a transcript of any proceedings in the circuit court. A return shall be filed with this court within 70 days of this opinion.
REMANDED WITH INSTRUCTIONS.
PATTERSON and McMILLAN, JJ., concur.
TAYLOR, P.J., concurs specially with opinion.
LONG, J., recuses.
TAYLOR, Presiding Judge, concurring specially.
Defendants create a mine field for participants in the judicial system of the State of Alabama when they refuse appointed counsel and then refuse to take part in their defense. It is incumbent on the courts as well as the prosecution to dot every "i" and to cross every "t."

On Return To Remand
COBB, Judge.
On March 8, 1996, we remanded this case to the circuit court for a hearing to determine whether the appellant, Lynda Lyon Block, fully understood the consequences of her waiver of appellate counsel and her failure to file a brief on appeal.
This case involved the death of career police officer, Roger Lamar Motley, who, during a routine investigation of a complaint made by a concerned citizen, was killed in the line of duty. The prosecution's case against Block was virtually impenetrable. Block was convicted of the capital offense of murder under § 13A-5-40(a)(5), Ala.Code 1975. The jury, by a 10-2 vote, recommended the death penalty; the trial court imposed the death penalty after a sentencing hearing.
The appeal of Block's conviction has been anything but routine. Block represented herself at trial, and she has maintained, and continues to maintain, that this Court does not have jurisdiction or authority over her. Consequently, she refused appointed appellate counsel and refused to file a pro se brief on appeal after being warned by the trial court of the dangers of failing to pursue her right of appeal. Following the reasoning set out in Sibley v. State, [Ms. CR-93-1665, March 8, 1996] *406 ___ So.2d ___ (Ala.Cr.App.1996) ("Sibley I"),[1] we remanded the case with instructions to the trial court to ensure that Block's waiver of appellate counsel and her decision not to file a brief on appeal were voluntary and knowing, in view of the serious consequences that follow such actions. The circuit judge held a hearing and entered an order based on the testimony received at that hearing. On remand, Block has again refused to file a brief with this court.
The appeal of the capital conviction and death sentence of Block's codefendant, George E. Sibley, Jr., was the first capital case this Court considered without benefit of a brief for the appellant in which the issues are presented. Sibley v. State, [Ms. CR-93-1665, March 21, 1997] ___ So.2d ___ (Ala.Cr.App.1997) ("Sibley II").[2] The only procedural difference between this case and Sibley is that Block dismissed her appointed trial counsel, who had been providing zealous representation, and proceeded pro se at trial. Sibley was represented at trial by appointed counsel, but he refused counsel on appeal and refused to appeal. We must examine Block's case, as we did Sibley's, without the benefit of a brief filed by the appellant. As this Court stated in Sibley:
"`In all cases in which a defendant has been sentenced to death in this state, the judgment of conviction shall be subject to automatic review and the sentence of death shall be subject to review by the Court of Criminal Appeals and the Alabama Supreme Court in accordance with the provisions of § 13A-5-53. § 13A-5-55; § 12-22-150; Ala. R.App.P. 39(b); Ala.R.App.P. 45A. This review is mandatory and cannot be waived. Before a defendant can be executed, the sentence of death must be found appropriate by both the Court of Criminal Appeals and the Alabama Supreme Court, after a review of the aggravating and mitigating circumstances found by the trial court. Richardson v. State, 376 So.2d 205 (Ala.Cr.App.1978), aff'd. 376 So.2d 228 (Ala.1979). The responsibilities and procedures set out in our statutes and rules pertaining to the death penalty are not to be suspended simply because an accused invites or seeks the death penalty. A defendant cannot be executed in this state unless his guilt and the propriety of his sentence have been established.'"
Sibley II, ___ So.2d at ___ (quoting Nelson v. State, 681 So.2d 252, 256 (Ala.Crim. App.1995)).
Although the appellant refuses to accept the jurisdiction of this Court, we must nevertheless fulfill our statutory duty. We will examine the voluntariness of the appellant's waiver of counsel and her failure to file an appellate brief. We will review the facts in order to determine if there was sufficient evidence at trial to support her conviction for the intentional murder of a police officer while that officer was on duty. We will review the appropriateness of the death sentence imposed. § 13A-5-53, Ala.Code 1975. Finally, we will review the record for any error that has or probably has adversely affected any of Block's substantial rights. Rule 45A, Ala.R.App.P.

I.
We first examine Block's waiver of counsel. In spite of repeated warnings by the trial court as to the consequence of proceeding pro se, Block chose to represent herself. Throughout the trial, the court thoroughly and continuously advised Block of the serious nature of the charged offense and the probable disadvantage she could incur without the aid of counsel. *407 The trial court's efforts to ensure that Block understood the potential perils of representing herself are contained in the record.
At a December 26, 1993, hearing the trial judge stated:
"You're charged with capital murder, the most serious offense you can be charged with in a criminal court. Unless you are legally trained you will be at a distinct disadvantage if you don't have the assistance of a trained attorney who's qualified in criminal law. There are procedural steps that must be taken in the trial of any case. Lawyers are trained to know what those are.... There are time limits that have to observed.... The trial itself will involve technicalities that unless you are legally trained you put yourself at a distinct disadvantage. Selection of the jury involves questions that only lawyers who are legally trained are able to handle competently. The calling of witnesses, the subpoenaing of witnesses, the questioning of witnesses, cross-examination of witnesses, these are things that lawyers know how to do that presumably you do not.... In my judgment that would be extremely unwise, particularly in view of the serious criminal case that you're faced with."
R. 113-14.
At a September 1, 1994, hearing the trial court thoroughly apprised Block of what she would be expected to do if she represented herself at trial. The court also made it perfectly clear that it believed that it was in Block's best interest to accept appointed counsel. Additionally, the court explained to Block that she would be expected to comply with all rules of court, which, as a nonlawyer, she probably was not familiar with. The court also explained the disadvantage she would have in attempting to access supplies, books, and witnesses from jail without the aid of an attorney. The court also stated:
"Now you are an intelligent woman, I can tell that from the letters you have sent me and the manner in which you speak. But I don't think you're legally trained. People don't go to law school for three years just to be wasting time. They're there to learn how to do precisely those things that I have told you will be necessary to be done in this case. You will be at a distinct disadvantage. This case is as serious as it gets. You are on trial for your life."
R. 125-26.
At the October 27, 1994, hearing the trial judge painstakingly explained to Block usual trial procedure, such as jury selection, marking exhibits, discovery, testifying, cross-examination, jury charges, sentencing, and appeal, and how she would be expected to proceed. The trial court allowed Block to reflect on this matter before deciding whether or not to decline the aid of an attorney. R. 145-214.
Before jury selection on November 23, 1994, the trial court stated "I've given you ample opportunity to accept court appointed attorneys to assist you and you have declined to accept that so I think I've advised you in great detail about the consequences of that decision. I assume that you wish to continue on without court appointed lawyers, is that correct?" R. 314. Block responded that she wanted to proceed without counsel.
In her opening statements to the jury, Block stated that "The State of Alabama offered and in fact supplied me with very competent lawyers." R. 637. Block then explained to the jury why she chose to represent herself.
After sentencing, the trial judge advised Block that an appeal of her conviction was automatic and that she had the right to appointed counsel if she desired. The trial court stated: "I recommend to you that you accept an appointed attorney. To manage an appeal requires compliance with a great many technical rules. Do you wish this Court to appoint an attorney to assist you on appeal?" R. 1897. Block responded that she did not. A trial transcript *408 was provided to Block at the State's expense.
In the present case, as in Sibley, the trial judge literally said and did all that a judge could do to dissuade Block from her decision to represent herself at trial and on appeal. After being fully advised of the disadvantages of self-representation, Block chose to proceed pro se. After her conviction and sentencing, she continued to represent herself.
In the automatic appeal of her conviction, Block refused to comply with the requirements of appellate procedure and did not file a brief in this Court. The trial court complied with this Court's directions in our March 8, 1996, opinion and held a hearing to determine if Block understood the consequences of waiving counsel and not presenting issues on appeal. The trial court's order on return to remand states, in pertinent part:
"This case is before the Court on remand from the Court of Criminal Appeals directing this Court to inform Defendant of consequences of waiving counsel on appeal and failure to file a brief.
"The Defendant is present in court.
"This court has again advised the Defendant of her right to counsel on appeal and has warned Defendant of the consequences of her waiver of counsel. The Defendant has also been advised of the consequences of her failure to file an appellate brief.
"The Defendant has refused to answer questions directed to her by the court but has read a prepared statement into the record.
"This court has had frequent contact with the Defendant since she was first brought before the court in October 1993. She was tried before a jury for the offense of capital murder in December 1994.
"Based on that frequent contact, facts elicited at trial, presentence report and numerous pro se motions and letters filed by the Defendant, the Court makes the following findings of fact:
"1. The Defendant is an intelligent, mature individual in good mental and physical health;
"2. She knowingly and voluntarily waived her right to be represented by attorneys at trial;
"3. She is fully aware of the nature of her conviction and the seriousness of the sentence imposed;
"4. The Defendant has shown a basic understanding of rules of procedure, evidence and courtroom decorum;
"5. Her waiver of appellate counsel is not the result of mistreatment or coercion;
"6. The Defendant has knowingly and voluntarily waived her right to appellate counsel;
"7. The Defendant understands the consequences of failing to file an appellate brief.
"It further appears to this Court that the Defendant is attempting to manipulate the appellate courts to her advantage by refusal of appellate counsel. This is demonstrated by the passage of nine months since the transcript was filed by the Court Reporter."
C.R.R. 10-11.[3]
We acknowledge the extremes to which the trial court has gone to ensure that Block was fully informed of and that she understood her rights. These measures were necessary because of the finality of the sentence imposed in this case. Our discussion in Sibley II, supra, is dispositive of the issue whether a capital defendant may waive counsel on appeal and refuse to file briefs:
"[T]his court is cognizant that a criminal defendant has a constitutional right to represent himself. Faretta v. California, 422 U.S. 806, 819-822, 95 S.Ct. 2525, 2533-2534, 45 L.Ed.2d 562 (1975). *409 A defendant in a capital case also has that right. `The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his own defense.' 422 U.S. at 819, 95 S.Ct. at 2533. The intelligence of that waiver must be scrutinized, as the Supreme Court held in Faretta:

"`When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself the accused must "knowingly and intelligently" forgo those relinquished benefits.... Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he's doing and his choice is made with eyes open."'
"422 U.S. at 835, 95 S.Ct. at 2541 (citations omitted). Accord, Ford v. State, 515 So.2d 34, 40 (Ala.Crim.App.1986), aff'd, 515 So.2d 48, 49-50 (Ala.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988). `"[T]he sole issue to be determined at a Faretta hearing is whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action."' 515 So.2d at 41, quoting Curry v. Superior Court, 75 Cal. App.3d 221, 226, 141 Cal.Rptr. 884, 887 (1977).
"In United States v. Cash, 47 F.3d 1083 (11th Cir.1995), the Eleventh Circuit Court of Appeals outlined the factors necessary in determining the validity of a waiver of counsel:
"`They are: (1) The defendant's age, educational background, and physical and mental health; (2) the extent of defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of charges, possible defenses, and penalties; (4) the defendant's understanding of the rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and the extent to which that counsel aided the defendant; (7) any mistreatment or coercion of defendant; and (8) whether the defendant was trying to manipulate the events of trial. [Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065-67 (11th Cir.1986)]. All factors need not point in the same direction.'
"47 F.3d at 1088-1089.
"The reasoning in cases involving the waiver of counsel also applies to waiver of the right to appeal. As the Alabama Supreme Court noted in Ex parte Dunn, 514 So.2d 1300, 1303 n. 2 (Ala.1987):
"`The standards for waiver of appeals are somewhat unclear, because there is no "right" to an appeal under the Constitution, although once a state grants a non-discretionary appeal to defendants, the Fourteenth Amendment requires that the appellate process conform to the standards of due process and equal protection on the first such appeal. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, on a first non-discretionary appeal, (i.e., a state "appeal as of right"), the Fourteenth Amendment establishes a right to counsel and a right to effective assistance by that counsel. Id. Moreover, waiver of this constitutional right to counsel on appeal must be "knowing and intelligent." Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967). However, waiver of the actual appeal has been found to require a lower standard, because the appeal itself is not constitutionally protected. See Norris v. Wainwright, 588 F.2d 130 (5th Cir.1979), cert. denied, *410 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). As Norris indicates, however, some cases have spoken of waiver of an appeal as requiring "knowing and intelligent" action. Id. at 136, n. 3.
"`We need not resolve this issue, because the evidence in this case allows the inference that the petitioner made a knowing and intelligent waiver of his right to appeal.'"
Sibley II, ___ So.2d at ___.
In the present case, as in Sibley, based on the trial court's frequent contacts with Block throughout the trial and its extensive colloquies with Block about this issue on separate occasions, this Court and courts in the future that are called upon to review this case should be satisfied that Block not only knowingly, intelligently, and voluntarily, waived her right to trial counsel, but that, by failing to file a brief, she also knowingly waived her right to present issues to this Court. The trial court correctly determined that when Block decided to forgo presentation of any issues in the review of her conviction and death sentence she appreciated her situation and she knew that her life was at stake. Sibley II, supra. In a letter dated March 13, 1996, Block expressed disdain for this Court's opinion in Sibley I, supra, and informed this Court that she did not intend to seek an appeal in this court, but instead would appeal her conviction in a federal court at the proper time.
In spite of the fact that Block sought to waive appellate review of her conviction and sentence, we have reviewed the case as required by the Code of Alabama and applicable caselaw, as discussed above.

II.
Although Block did not challenge the sufficiency of the evidence presented at trial to support conviction, we have reviewed the evidence in order to determine if the State met its burden. See, Clemons v. State, 720 So.2d 961 (Ala.Crim.App. 1996); Carr v. State, 640 So.2d 1064 (Ala. Crim.App.1994).
The trial court, in a well-written sentencing order, summarized the facts as follows:
"The Defendant, Lynda Lyon [Block], and her common law husband, George E. Sibley, Jr., lived in Orlando, Florida. In August 1992, the Defendant and her husband were arrested and charged with aggravated battery and burglary in a stabbing incident involving Lyon's 79year-old former husband.
"They entered a plea of nolo contendere to these charges and a sentencing hearing was set for September 7, 1993. They failed to appear for sentencing. On September 10, 1993, the Defendant, Sibley, and her son fled the state of Florida knowing that a writ of arrest had been issued by the Court.
"On October 4, 1993, the Defendant was parked near Big B Drug[s] in Pepperell Corners Shopping Center in Opelika, Alabama. She was using a pay telephone outside the store and Sibley stayed near the car with the child.
"A passerby, Ramona Robertson, heard the child ask for help. Worried that the child was in danger, she kept an eye on the Defendant's vehicle as it moved to a different location in the parking lot near the entrance to Wal-Mart.
"As Sgt. Roger Motley of the Opelika Police Department came out of a store in the shopping center, Robertson reported to him what she had observed. Motley, a uniformed officer, had been running an errand for the police department. After the situation was reported to him, Motley approached the vehicle of the Defendant.
"At that point, Sibley got out of his vehicle as Motley approached. Meanwhile, Lyon was using the pay telephone near the entrance to Wal-Mart. Prior to approaching Sibley, Motley radioed to *411 the Opelika Police Department as to his activities with respect to investigation of this incident. A tape recording of those radio contacts was admitted at trial and played for the benefit of the jury.
"Motley approached Sibley and asked for his driver's license. Sibley stated that he did not have one because he had no contacts with the State. Motley then requested identification from him.
"At that point, Sibley pulled a pistol from a concealed holster on his person and began firing at Motley. Motley attempted to get away from him and ran behind his vehicle for cover. The officer then began returning fire at Sibley.
"Numerous shots were fired by Sibley at Motley. The officer was able to fire his weapon three times at Sibley.
"Meanwhile, Lyon heard the shooting and ran toward the patrol car. She pulled a pistol from her purse and began firing at Motley from his rear or side.
"The officer was finally able to get into his patrol car and radio for help. The patrol car started to move through the parking lot in an erratic manner, hitting several vehicles as it moved prior to its coming to a stop near Big B Drug[s]. Motley was mortally wounded.
"The Defendant, Sibley and the child then sped away from the scene.
"After a high speed chase, they were stopped at a roadblock on Wire Road in Auburn, Alabama. The child was released and, after a four-hour standoff, the Defendant and Sibley surrendered to the police.
"A search of the automobile of the Defendant uncovered numerous weapons and large quantities of ammunition.
"The police officer had several gunshot wounds. The fatal shot went through his chest from the front at a slight downward angle. The fatal bullet was never recovered and tests were inconclusive as to which gun fired the fatal shot, although it appears, from the physical evidence and testimony, that [Block] most likely fired it.
"In a statement given to the police following her arrest, the Defendant admitted firing at the officer three times.
"At the time this incident occurred, the parking lot was crowded with vehicles and people. Numerous witnesses testified at trial as to being eyewitnesses to the shooting."
C.R. 356-58.
The State literally had an airtight case; hence, the State easily met its burden of proof on each and every element of the offense of capital murder, in that there was overwhelming evidence that Block had murdered Opelika Police Officer Roger Lamar Motley while Office Motley was on duty.

III.
Because there can be no waiver of appellate review in a case involving the death penalty, pursuant to § 13A-5-53, Ala.Code 1975, we have reviewed the complete record in this case and have found no error that adversely affected Block's rights. Because we have found no error in the guilt or sentencing phases in this case, we must determine whether death was the proper sentence. Ala.Code 1975, § 135-53(b). Following our examination of the record, we have concluded that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The trial court found two aggravating circumstancesthat Block knowingly created a great risk of death to many persons and that the capital offense was committed for the purpose of avoiding or preventing a lawful arrest. C.R. 359. The trial court found no statutory nor nonstatutory mitigating circumstances. C.R. 360-61. The trial court weighed the aggravating and mitigating circumstances and sentenced Block to death. Our independent weighing of the aggravating and mitigating circumstances convinces us that death by electrocution is the appropriate sentence. Finally, our review *412 of similar cases in which the sentence of death was imposed convinces us that the sentence of death imposed upon Block is not excessive or disproportionate. See e.g. Carr v. State, 640 So.2d 1064 (Ala.Crim. App.1994); Harrell v. State, 470 So.2d 1303 (Ala.Crim.App.1984), aff'd, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269 88 L.Ed.2d 276 (1985).
In light of the above, we affirm Block's conviction for the offense of capital murder and the sentence of death.
AFFIRMED.
McMILLAN and BROWN, JJ., concur.
LONG, P.J., and BASCHAB, J., recuse.
NOTES
[1] Sibley v. State is a companion case to this one. George E. Sibley, Jr., was also convicted of capital murder and sentenced to death for the murder of Officer Motley.
[2] Because of the identical appellate posture of this case with that of the case involving the appellant's codefendant, George E. Sibley, Jr., we shall not restate the law we cited in Sibley, ___ So.2d ___, but will simply refer to that case as authority.
[3] "C.R.R." refers to the clerk's record on return to remand.