Eddie James STROZIER,
Petitioner–Appellant,

v.

Lanson NEWSOME, Warden,
Respondent–Appellee.

No. 87–8182.

United States Court of Appeals,
Eleventh Circuit.

April 27, 1989.

Glen M. Darbyshire, Sutherland, Asbill & Brennan, Atlanta, Ga., for petitioner-appellant.

Mary Beth Westmoreland, Dennis R. Dunn, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before HATCHETT and CLARK, Circuit Judges, and HOEVELER *, District Judge.

CLARK, Circuit Judge:

Petitioner, Eddie James Strozier, appeals the denial of his writ of habeas corpus. Strozier contends that the state trial court violated his Sixth Amendment rights by not ensuring that he made a knowing and voluntary waiver of his right to counsel. The district court found the waiver valid. We reverse and remand for an evidentiary hearing to develop the record more fully.

## FACTS

Eddie Strozier was convicted of kidnapping and aggravated assault with intent to rape on May 18, 1983. Between the time of his indictment in January and the trial in May, Strozier was represented by three attorneys. At first Strozier was represented by an appointed public defender, but was unsatisfied with his performance. He retained a private attorney, William Auld, who represented him when he entered and then withdrew a guilty plea. Strozier fired that attorney, rejected appointment of a public defender and hired his last attorney, T.V. Mullinax, two weeks before trial.

---

* Honorable William M. Hoeveler, U.S. District Judge for the Southern District of Florida, sitting by designation.

On the morning of the trial Mullinax informed the court that Strozier was dissatisfied with his representation and wished to represent himself. The trial court did not address Strozier, but responded:

He's got a constitutional right to defend himself, but I'm not excusing you, Mr. Mullinax. I'll expect you to aid him and assist him at any time there's a question raised. But the defendant himself, he must understand that the procedure is technical. We're going to abide by the rule as best we possibly can. His ignorance of the rules are [sic] not going to be any excuse.

(R. 2:164). That was the entire exchange between the court and Strozier before jury selection began and the trial judge did not bring up the decision to proceed pro se again. Before closing argument, however, petitioner argued that he had been denied his right to counsel and read aloud from a case explaining the factors of which the defendant must be informed before proceeding pro se.[1]

At trial, the prosecution presented testimony of the 15–year–old victim and her family which established the following sequence of events. At approximately 9:00 a.m. on August 10, 1982, the victim was awakened and pulled from her bed by Strozier. He told her to come with him and when she tried to scream he placed her in a chokehold. He took her out to the back of the apartment and into a wooded area where he attempted to rape her. The petitioner did not penetrate the victim, however, because a noise startled him and he ran away.

The petitioner represented himself throughout trial. In his opening statement and on his cross-examination of the prosecution witnesses, Strozier admitted that he had entered the victim's apartment and began looking for money to steal. Petitioner later took the stand and Mr. Mullinax was ordered to conduct the direct examination. Strozier testified that once he entered the apartment, he became dizzy from drugs he had been taking and did not know what happened until he was in the woods with the victim. He ran away when he realized what was happening. On cross-examination, the prosecutor was able to introduce Strozier's prior convictions for rape for impeachment purposes.

Strozier was convicted and sentenced to consecutive terms of twenty years for the kidnapping and ten years for the aggravated assault. The Georgia Court of Appeals affirmed petitioner's convictions on direct appeal and the Georgia Supreme Court denied review. *Strozier v. State*, 171 Ga. App. 703, 320 S.E.2d 764 (1984). Strozier then sought a writ of habeas corpus in state court. After a hearing in which petitioner appeared pro se, the court denied relief without opinion. The Georgia Supreme Court denied review. Petitioner applied for a writ of habeas corpus in the United States District Court for the Northern District of Georgia. The case was assigned to a magistrate who recommended that the petitioner's application be denied.

---

1. The interchange was as follows:

MR. STROZIER: It says here in *Jackson versus State* [149 Ga.App. 496, 254 S.E.2d 739 (1979) ] ... a defendant has a federal constitutional right to waive his right of counsel and represent himself....

In a case in which a defendant says he wants to represent himself, a special burden rests upon the trial judge. He must be sure that the record discloses that the defendant voluntarily, knowingly, and intelligently waives counsel and in the process he must be advised of his right to counsel and informed that if he cannot afford counsel, the judge will appoint counsel to represent him. There is a presumption that the defendant does not waive his right to counsel and the trial judge must determine whether or not there has been a valid waiver. It has been said that the trial judge must investigate as long and as thoroughly as the circumstances of the case before him demand. To be valid, a waiver of counsel must be made with an apprehension of: (1) the nature of the charges; (2) the statutory offenses included within them; (3) the range of allowable punishments thereunder; (4) possible defenses of the charges; (5) circumstances in mitigation thereof; and (6) all other facts essential to a broad understanding of the whole matter.

THE COURT: You didn't have that did you?
MR. STROZIER: You didn't tell me that.
THE COURT: I see. Thank you.
The judge then proceeded with the case. (R. 4:477–78).

The district court adopted the magistrate's recommendation and denied the petition.

## DISCUSSION

■■■ In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court held that a defendant has the right to represent himself. Since the right to proceed pro se necessitates the waiver of the constitutional right to counsel, the waiver of counsel must be made knowingly and voluntarily. The *Faretta* court held that

> [a]lthough a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that "he knows what he is doing and his choice is made with his eyes open."

*Id.* at 835, 95 S.Ct. at 2541 (*quoting Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). Strozier contends that the trial judge failure's to hold a hearing to explain the disadvantages of self-representation rendered his waiver of counsel invalid. The district court denied relief finding that the trial transcript supported the validity of the waiver. We reverse and remand to the

district court in order to develop a more complete record.[2]

Since the Supreme Court announced its decision in *Faretta* there has been tension between the right to counsel and the right to self-representation. The tension exists because the rights are reciprocal: to assert one necessitates waiver of the other. *See Brown v. Wainwright*, 665 F.2d 607 (5th Cir.1982) (en banc). The problem is most difficult for the trial judge because if he allows a defendant his right to proceed pro se, he runs the risk that he may have denied the defendant his right to counsel. Similarly, if counsel is appointed to ensure that the right to counsel is not violated, the right to proceed pro se may be violated. This tension is doubly problematic because the violation of both rights is not subject to harmless error analysis. *Chapman v. United States*, 553 F.2d 886 (5th Cir.1977).[3]

■■■ To avoid this dilemma, this Circuit has held that after an unequivocal assertion of his right to proceed pro se, the court must hold a hearing "to make sure that the accused understands the risks of proceeding pro se." *United States v. Chaney*, 662 F.2d 1148, 1152 (5th Cir. Unit B 1981).[4] Although a hearing is the preferred route, the absence of a hearing is not fatal since in rare cases the record may support a waiver. *Fitzpatrick v. Wainwright*, 800

---

**2.** We also hold that the other issues presented by Strozier are without merit.

**3.** This case presents a clear example of the dilemma created by *Faretta.* On the one hand, if the trial judge had denied Strozier his right to proceed pro se, he would have argued that his Sixth Amendment rights were violated. Instead, Strozier argues that granting his request to proceed pro se violated his right to counsel. At first glance, it seems that *Faretta* offers defendants a foolproof method for overturning a conviction. The fact that the evidence against Strozier was overwhelming plays no part in the analysis, because the denial of right to counsel cannot be harmless error. Likewise, the right to counsel applies in felony cases regardless of the complexity of the case. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**4.** The clear way to avoid the dilemma created by *Faretta* is for the trial court to conduct a hearing on the record in which the trial judge ensures that the decision to proceed pro se is being made knowingly and voluntarily. The

judge should do more than ask *pro forma* questions; he should explain the difficulties inherent in any criminal trial, including the importance of evidentiary rules. By engaging in this inquiry on the record, the trial court will safeguard the right to counsel by ensuring that all waivers are made knowingly and voluntarily. Additionally, the court will safeguard the integrity of the judiciary by removing a defendant's ability to manipulate the system and ensure the reversal of his convictions. Finally, making a record of the waiver hearing will assist in appellate review. It may be that a trial judge is satisfied, through his numerous contacts with a defendant, that the waiver of counsel is valid. However, a reviewing court may not assume from a silent record that a waiver is valid. Since a fundamental right is at stake—the right to counsel—trial judges should take the time to inquire into the voluntariness and intelligence of the waiver. Doing so will safeguard the right and protect the judicial system from manipulation.

F.2d 1057, 1065–67 (11th Cir.1986). The hearing, therefore, is a means to the end, namely ensuring a voluntary and intelligent waiver. As *Fitzpatrick* states, "the ultimate test is not the trial court's express advice, but rather the defendant's understanding." *Id.* at 1065.

In *Fitzpatrick,* this court found a waiver of counsel valid although the trial court had not held a hearing to specifically warn the defendant of the disadvantages of proceeding pro se when he made his decision. The court was able to discern from the record that the defendant understood what he was doing when he waived his right to counsel. *Id.* at 1065–67. The record in this case is ambiguous.[5] There are several factors pointing to the validity of the waiver and several factors militating against it. As such, it is necessary to remand to the trial court to develop a fuller record on the validity of waiver.[6]

Upon remand, the district court should specifically consider the factors enumerated in *Fitzpatrick* to determine whether the defendant was actually aware of the dangers of proceeding pro se. The *Fitzpatrick* court considered the following factors: (1) the background, experience and conduct of the defendant including his age, educational background, and his physical and mental health; (2) the extent to which the defendant had contact with lawyers prior to the trial; (3) the defendant's knowledge of the nature of the charges, the possible defenses, and the possible penalty; (4) the defendant's understanding of the rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which he aided the defendant; (7) whether the waiver of counsel was the result of mistreatment or coercion; or (8) whether the defendant was trying to manipulate the events of the trial. *Fitzpatrick,* 800 F.2d at 1065–67.

The record to some extent supports the validity of the waiver. Most importantly, the record indicates that Strozier read to the judge a quote which listed the requirements for a judge faced with a request to proceed pro se. *See supra* n. 1. This does provide some support for the Georgia Court of Appeals determination that Strozier understood the dangers of self-representation. *Strozier v. State,* 171 Ga.App. 703, 320 S.E.2d 764 (1984). Nevertheless, petitioner raises an important point: namely, the fact that Strozier read that passage to the judge at the *end* of the trial is not determinative of Strozier's knowledge at the time of the waiver. That argument loses its force, however, since it also appears that Strozier wrote a "motion to dismiss" prior to trial that contained the same language.[7]

Still the fact that Strozier wrote this letter is open to different interpretations. The quote stated in part

to be valid ... a waiver of counsel must be made with an apprehension of (1) the nature of the charges, (2) the statutory offenses included within them, (3) the range of allowable punishments thereunder, (4) possible defenses to the charges (5) circumstances in mitigation thereof

---

5. This case is not a case in which the record is bare as to the validity of the waiver. If that were the case, the petitioner would prevail. *Jackson v. James,* 839 F.2d 1513, 1517 (11th Cir.1988).

6. Since there is some support for the validity of the waiver in the record, the burden is on the defendant to prove that the waiver was not knowing and voluntary. *Carnley v. Cochran,* 369 U.S. 506, 516–17, 82 S.Ct. 884, 890, 8 L.Ed. 2d 70 (1962).

7. The dates on the "motion" are somewhat confusing, but it appears that the petitioner wrote it on May 5, 1983 which was before trial. The other date indicates that the motion may not

have been received, or received but not filed, until after trial. However, if the May 5th date is accurate, it would show that petitioner knew of the case before trial and thus may support a finding that the waiver of counsel was voluntarily and intelligently made.

The district court should draw no inferences from our comments about Strozier's possible knowledge of the dangers of self representation. We have gone into some detail in order to describe the problem. Our remanding for an evidentiary hearing is for the express purpose of answering this and other hard factual questions presented by this appeal.

and (6) all other facts essential to a broad understanding of the whole matter.

(R. 2:136; 4:477–78). It is not at all clear from the record whether Strozier understood from reading that quote what the disadvantages of proceeding pro se were. It is just as possible that Strozier sent the letter so that the trial judge would inform him of these factors in relation to his charges. Significantly, there is no evidence in the record as to Strozier's educational background or his mental and physical health at the time. Such evidence is generally relevant to a determination of the validity of the waiver. More specifically it would be helpful in discerning petitioner's level of understanding of the quoted passage.

The only aspect of defendant's background which appears in the record is his criminal record which is relevant to the determination of the validity of his waiver. His prior record shows that Strozier had some familiarity with the criminal process and possibly some knowledge of the substantive, procedural and evidentiary law. However, although the record is clear as to the extent of his record, it is contradictory as to whether Strozier was represented in those cases. In addition, we hesitate to impute a knowledge of the law to Strozier because of his performance in this case. It is clear that the defendant was mistaken as to the elements of the offense and there is serious doubt that the defendant understood the consequences of his taking the stand. His decision to testify resulted in the introduction of prior convictions which may have had a substantial impact on the jury. Therefore it is important to know whether the decision to testify was an informed or ignorant decision. Evidence that showed that Strozier either was given advice or knew of the consequences of taking the stand would support a finding of an intelligent waiver of counsel. On the other hand, if Strozier was ignorant of these consequence, it would weigh against the finding of an intelligent waiver.

Another significant absence from the record is an accurate documentation of the history of Strozier and his attorneys. An accurate description is important for several reasons. First, it may help show that Strozier was fully aware of the difficulties he would face at trial. Specifically, it may be that Strozier was aware of the elements of the offense, possible defenses, or strategies. Second, and perhaps more importantly, an accurate documentation of the history of Strozier and his attorneys will aid in determining whether Strozier was attempting to manipulate the court system, or whether he was honestly dissatisfied with his attorney's performance. If the latter is true, it may be that Strozier's decision to proceed pro se was not voluntary. *Cf. Jackson v. James*, 839 F.2d at 1516–17 (waiver not voluntary when defendant given choice of representing self or keeping public defender who moved to be dismissed because of personal difficulties with defendant).

Finally, a more accurate record of the participation of standby counsel is required. From the record, it is impossible to evaluate Mullinax's performance. For example, Mullinax was ordered to conduct the direct examination of the petitioner. If Mullinax was unprepared, as petitioner suggests, then requiring him to participate may have been more harmful than helpful. Nor does the record reflect whether Mullinax advised Strozier of the disadvantages that would result from his taking the witness stand and inviting disclosure of his criminal record. The record does not reflect any other active participation by Mullinax. However, it is impossible to tell whether Mullinax gave Strozier advice as he proceeded. For example, Mullinax was included in an off-the-record discussion with the prosecutor and the judge during the testimony of defense witness Shirley Rowe from which the defendant was excluded. Presumably, the conference discussed the consequences of Shirley Rowe testifying as to Strozier's good character. Not only does the record not reflect the content of the conference, but there is also no way of knowing whether Mullinax gave any advice to the defendant after the conference.

The record in this case is at most ambiguous. In some instances, the facts are

contradictory, and in some instances the facts are just not there. Before a decision can be made on the voluntariness and intelligence of Strozier's waiver of counsel, the court must have a more accurate record. Therefore, we REVERSE the district court order denying relief and REMAND for an evidentiary hearing.