775 So.2d 235 (1996)
George E. SIBLEY, Jr
v.
STATE.
CR-93-1665.
Court of Criminal Appeals of Alabama.
March 8, 1996.
Opinion on Return to Remand March 21, 1997.
Rehearing Denied May 23, 1997.
*237 George E. Sibley, Jr., appellant, pro se.
Jeff Sessions and Bill Pryor, attys. gen., and Sandra Stewart, deputy atty. gen., for appellee.
COBB, Judge.
George E. Sibley, Jr., was indicted for the murder of Roger Lamar Motley, an Opelika police officer. Specifically, the appellant was indicted under § 13A-5-40(a)(5), Code of Alabama 1975, which defines as a capital offense the "murder of any police officer ... while such officer... is on duty, regardless of whether the defendant knew or should have known the victim was an officer ... on duty." The jury found the appellant guilty of capital murder and unanimously recommended the death penalty. The trial judge sentenced the appellant to death.
Following sentencing, the appellant's counsel filed a motion seeking to withdraw as the appellant's counsel. That motion was granted by the trial court. The trial court then appointed new counsel to represent the appellant on appeal. Shortly, thereafter, appellant's counsel filed a motion to withdraw because, she said, the appellant did not want her as counsel. This court granted the appellant's request to proceed pro se but refused to grant the motion allowing appellate counsel to withdraw. The State then filed a motion with this court requesting that a hearing be held on the appellant's request to proceed pro se. This court remanded the cause to the circuit court with instructions to hold a hearing.
The trial court held a hearing on the appellant's motion. The following portion of the record is relevant to the appeal.
"THE COURT: Court will come to order. This is a hearing on motions filed on behalf of George Sibley in case number 93-954. Mr. Sibley is present in court.
"Mr. Sibley, the first thing I want to do is to advise you of some rights and then get your response to those rights.
"You have a right under Alabama law for appointed counsel on appeal. However you may represent yourself if that's what you choose to do.
"Now, a criminal appeal is a legally technical process. It involves the examination of the written transcript of your trial to seek out any alleged errors that occurred during the course of that trial or pre-trial proceedings. It also involves the requirement of writing legal briefs in a form that conforms to rules of the appellate courts. It can involve conducting oral arguments before those appellate courts in a manner that would be in compliance with the rules of appellate procedure.... The appeal involves certain deadlines that are set by court rules and statutes that you must comply with. It is difficult to do those things without legal training. It is particularly difficult to do those things while you're incarcerated in prison without the assistance of attorney.

*238 "But, my impression is that you are an intelligent man. If you choose to do that you need to let me know now. If you decide that you want to waive counsel on appeal but you choose to withdraw that waiver and request counsel then counsel can be appointed at that point.
"What are your wishes in that regard? "THE DEFENDANT: Sir, first of all I am not representing myself per se, I'm appearing in proper person, propria persona, and there is a difference. I don'tI cannot, I'm not two people in one. I can't represent myself, I am myself and I do want to make that clear on the record that I'm not in pro se and not representing myself. I am in propria persona and will present my own case in my own cause.
"THE COURT: All right. Now, there's not any legal doctrine I know of that would permit you to assume that sort of status but if you choose to do that that's fine. What I want to know is do you want appointed legal counsel to assist you in perfecting this appeal?
"THE DEFENDANT: No, sir, I do not.
"THE COURT: You do not want that and you understand everything I told you now with reference to the procedural steps that are to be taken?
"THE DEFENDANT: Yes, sir. I've been reading books forever since I've been able to get a hold of them.
"THE COURT: All right. If that is the case then I will relieve Mrs. Brown and Mrs. Camp from the initial appointment that I made and you two ladies will have no further role in this proceedings at all and you're free to go at this time."
The appellant was then allowed to proceed pro se. This court, subsequently, appointed a lawyer to assist the appellant, but he refused this attorney as well. The appellant has not filed a brief with this court and this case was submitted to us on the brief of the State. In its brief, the State requests that this case be remanded to the circuit court for a hearing to determine whether the appellant fully understood the consequences of his waiver of appellate counsel and his failure to file a brief on appeal. Although because this is a capital case, the appeal is automatic, and we review the record for plain error and conduct the required statutory review under § 13A-5-53, Code of Alabama 1975, the appellant's failure to file a brief and pursue his appeal amounts to a waiver of appeal because he will be precluded from raising numerous issues in any later collateral proceedings he may pursue.
In Teske v. State, 507 So.2d 569 (Ala. Crim.App.1987), this court held:
"`It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights." A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

"`. . . .
"`The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused whose life or liberty is at stakeis without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record."

*239 Johnson v. Zerbst, 304 U.S. 458, 464-65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (footnotes omitted, emphasis added [in Teske]) These principles are equally applicable to asserted waivers of the right to counsel in state criminal proceedings. Carnley v. Cochran, 369 U.S. 506, 515, 82 S.Ct. 884, 889, 8 L.Ed.2d 70 (1962). In the later case of Faretta v. California, 422 U.S. [806] at 835 [95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)], wherein the Court held that an accused does have a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, the Court observed the following:
"`When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Johnson v. Zerbst, 304 U.S., at 464-465 [58 S.Ct. at 1023]. Cf. Von Moltke v. Gillies, 332 U.S. 708, 723-724 [68 S.Ct. 316, 323, 92 L.Ed. 309 1948] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Adams v. United States ex rel. McCann, 317 U.S. [269], 279 [63 S.Ct. 236, 242, 87 L.Ed. 268] [1942].'"
507 So.2d at 570-71.
The State concedes that the hearing in circuit court did not adequately apprise the appellant of the dangers and possible disadvantages of the appellant's waiver of counsel. The State recommended that the trial court consider the eight factors the Court of Appeals for the Eleventh Circuit has adopted when examining cases in which a defendant has waived counsel. These factors include:
"(1) the background, experience and conduct of the defendant including his age, educational back ground, and his physical and mental health; (2) the extent to which the defendant had contact with lawyers prior to the trial; (3) the defendant's knowledge of the nature of the charges, the possible defenses, and the possible penalty; (4) the defendant's understanding of the rules of procedure, evidence and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed, and the extent to which he aided the defendant; (7) whether the waiver of counsel was the result of mistreatment or coercion; or (8) whether the defendant was trying to manipulate the events of the trial."
Strozier v. Newsome, 871 F.2d 995, 998 (11th Cir.1989). Although the issue in Strozier was waiver of trial counsel, most of the factors could apply to the waiver of appellate counsel.
Further, the appellant was entitled to be fully informed of the consequences of his failure to file a brief to this court, which easily amounts to failing to pursue his appeal. United States v. Bushert, 997 F.2d 1343 (11th Cir.1993). See also Dunn v. State, 514 So.2d 1300, n. 2 (Ala.1987).
Therefore, because we agree with the State that it is unclear from the record that the appellant fully understood the consequences of his waiver of counsel and his failure to file a brief in this court, this cause is remanded to the circuit court for a hearing. At the hearing, the circuit court shall fully inform the appellant of the dangers and possible disadvantages of waiving counsel and failing to file a brief on appeal. Following the hearing the trial court shall make written findings as to whether the appellant knowingly and voluntarily waived his right to appellate counsel and whether he understood the consequences *240 of failing to file a brief in this court. The return to this court shall include the written findings and a transcript of any proceedings in the circuit court. A return shall be filed with this court within 70 days of this opinion.
REMANDED WITH INSTRUCTIONS.
PATTERSON and McMILLAN, JJ., concur.
TAYLOR, P.J., concurs specially with opinion.
LONG, J., recuses.
TAYLOR, Presiding Judge, concurring specially.
Defendants create a minefield for participants in the judicial system of the State of Alabama when they refuse appointed counsel and then refuse to take part in their defense. It is incumbent on the courts as well as the prosecution to dot every "i" and to cross every "t."

On Return to Remand
COBB, Judge.
The appellant, George E. Sibley, Jr., was convicted of the capital offense of murder of a police officer, see Ala.Code 195 § 13A-5-40(a)(5). At the conclusion of the case, the jury unanimously recommended that Sibley be sentenced to death. After the sentencing hearing and in accordance with the jury's recommendation, the trial court imposed a sentence of death.
In responding to a call placed by a concerned citizen who had overheard a child calling for help, an Opelika policeman, Roger Lamar Motley, was killed in the line of duty. After making an initial inquiry of Sibley, Officer Motley was gunned down by Sibley and his codefendant, Lynda Lyon Block, both of whom were fleeing from Florida to avoid being sentenced on assault charges.
Sibley, who was indigent, requested and received appointed counsel, who zealously represented him at trial. Counsel filed numerous motions on Sibley's behalf, argued those motions at many hearings, and constantly consulted with Sibley so that he had ample opportunity to participate in his own defense.
The prosecution's case was virtually impenetrable. The State produced 12 eye-witnesses, made a thorough presentation of forensic evidence tying Sibley to the murder of Officer Motley, and presented Sibley's statement and testimony. Sibley admitted that he shot Officer Motley, but argued that his actions were in self-defense.
As the State notes in its brief, "This case came to this Court in a peculiar posture." (State's brief p. 30.) The uniqueness of this case is not derived from the facts or from the trial, but from Sibley's total rejection of appellate counsel and his refusal to file a brief in this appeal. We are unaware of any prior case in which a defendant has refused to pursue any appeal from his conviction and sentence for capital murder. David Larry Nelson recently sought to forgo appeals following his resentencing in a capital murder case and refused to file a brief in this court. This court reviewed the sentence proceeding, however. As Judge Patterson stated:
"In all cases in which a defendant has been sentenced to death in this state, the judgment of conviction shall be subject to automatic review and the sentence of death shall be subject to review by the Court of Criminal Appeals and the Alabama Supreme Court in accordance with the provisions of § 13A-5-53. § 13A-5-55; § 12-22-150; Ala. R.App.P. 39(b); Ala.R.App.P. 45A. This review is mandatory and cannot be waived. Before a defendant can be executed, the sentence of death must be found appropriate by both the Court of Criminal Appeals and the Alabama Supreme Court, after a review of the aggravating and mitigating circumstances found by the trial court. Richardson v. State, 376 So.2d 205 (Ala.Cr.App.1978), *241 aff'd, 376 So.2d 228 (Ala.1979). The responsibilities and procedures set out in our statutes and rules pertaining to the death penalty are not to be suspended simply because an accused invites or seeks the death penalty. A defendant cannot be executed in this state unless his guilt and the propriety of his sentence have been established."
Nelson v. State, 681 So.2d 252, 256 (Ala. Crim.App.1995).
No issues have been presented to this court for review; nevertheless, we will proceed to determine whether Sibley's waiver of appellate counsel was knowing and voluntary. For the reasons stated in Nelson, we will also review the facts to determine if there was sufficient evidence at trial to support Sibley's conviction for the intentional murder of a police officer while on duty, and we will fulfill our statutory duty pursuant to § 13A-5-53 and review the appropriateness of the sentence imposed.

I
Although it is obvious from the record that Sibley received an energetic and competent defense at trial, he has chosen to repeatedly reject representation at the appellate level. Sibley also refused to file a pro se brief, although he was given ample opportunity to do so.
Following Sibley's conviction and sentence to death, his trial counsel filed various post-trial motions, a notice of appeal to this court, and a motion for the appointment of appellate counsel. (C. 435-37.) The trial court found Sibley to be indigent and appointed appellate counsel. In spite of the court's order appointing counsel, Sibley began to file a series of pro se motions. Appointed appellate counsel then filed a motion to withdraw, stating that Sibley refused to accept her as counsel. (C. 473.)
Although this court granted Sibley's request to proceed pro se, we did not grant counsel's motion to withdraw. We granted the first of the State's motions to remand this matter to the trial court to determine the appropriateness of Sibley's request to proceed pro se. At this first hearing on remand, the trial court informed Sibley of the appellate process, of the advantages of proceeding with counsel, and of the disadvantages of representing himself. The trial court further informed Sibley that he could waive counsel and later withdraw that waiver and request counsel. (Supp. R. 2-10.[1]) Sibley was adamant that he wanted to represent himself. (Supp. R. 3-4.) After going to great lengths to explain to Sibley his rights and to point out to him that his life hung in the balance, the trial court found that Sibley was "an intelligent man." The trial court then relieved appointed counsel and permitted Sibley to continue without representation. (Supp. R. 5.)
In various pro se pleadings, Sibley stated to this court that he did not intend to file a brief, whereupon this court appointed counsel to assist him in filing a brief. Once again Sibley rejected the appointment of an attorney, by way of an August 28, 1995, letter to this court. Sibley's second appointed appellate counsel also filed a motion to withdraw, and this court granted the motion. This court then gave Sibley one last opportunity to file his brief; Sibley rejected that opportunity also.
The State then filed a brief and requested that we remand this case to the trial court to determine whether Sibley's decision not to pursue an appeal was knowingly, intelligently, and voluntarily made. Out of an abundance of caution, and in light of the years of future appellate review in death penalty cases, we granted the State's request. Once again, this case was remanded to the trial court with the following directions:

*242 "[T]he circuit court shall fully inform [Sibley] of the dangers and possible disadvantages of waiving counsel and failing to file a brief on appeal. Following the hearing the trial court shall make written findings as to whether [Sibley] knowingly and voluntarily waived his right to appellate counsel and whether he understood the consequences of failing to file a brief in this court. The return to this court shall include the written findings and a transcript of any proceedings in the circuit court."
Sibley v. State, 775 So.2d 235, 239-240 (Ala.Crim.App.1996).
The trial court complied with this court's directions and held another hearing. Its order on return to remand states, in pertinent part:
"This court has again advised the Defendant of this right to counsel on appeal and has warned Defendant of the consequences of his waiver of counsel. The Defendant has also been advised of the consequences of his failure to file an appellate brief.
"The Defendant has refused to answer questions directed to him by the court but has read a prepared statement into the record.
"This court has had frequent contact with the Defendant since he was first brought before the court in October 1993. He was tried before a jury for the offense of capital murder in May 1994.
"Based on that frequent contact, facts elicited at trial, presentence report and numerous pro se motions and letters filed by the Defendant, the Court makes the following findings of fact:
"1. The Defendant is an intelligent, mature individual in good mental and physical health;
"2. He was represented at trial by competent attorneys;
"3. He is fully aware of the nature of his conviction and the seriousness of the sentence imposed;
"4. The Defendant has shown a basic understanding of rules of procedure, evidence and courtroom decorum;
"5. His waiver of appellate counsel is not the result of mistreatment or coercion;
"6. The Defendant has knowingly and voluntarily waived his right to appellate counsel;
"7. The Defendant understands the consequences of failing to file an appellate brief.
"It further appears to this Court that the Defendant is attempting to manipulate the appellate courts to his advantage by refusal of appellate counsel."
(C.R.R. 12-13.[2])
The extremes to which this court has gone to ensure that Sibley was fully informed of and understood his rights were necessary due to the finality of the sentence imposed in this case. Yet this court is cognizant that a criminal defendant has a constitutional right to represent himself. Faretta v. California, 422 U.S. 806, 819-822, 95 S.Ct. 2525, 2533-2534, 45 L.Ed.2d 562 (1975). A defendant in a capital case also has that right. "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his own defense." 422 U.S. at 819, 95 S.Ct. at 2533. The intelligence of that waiver must be scrutinized, as the Supreme Court held in Faretta:
"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself the accused must `knowingly and intelligently' forgo those relinquished benefits.... Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the *243 dangers and disadvantages of self-representation, so that the record will establish that `he knows what he's doing and his choice is made with eyes open."
422 U.S. at 835, 95 S.Ct. at 2541. (citations omitted.) Accord, Ford v. State, 515 So.2d 34, 40 (Ala.Crim.App.1986), aff'd, 515 So.2d 48, 49-50 (Ala.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988). "`[T]he sole issue to be determined at a Faretta hearing is whether the defendant has the mental capacity to waive his constitutional right to counsel with a realization of the probable risks and consequences of his action.'" 515 So.2d at 41, quoting Curry v. Superior Court, 75 Cal. App.3d 221, 226, 141 Cal.Rptr. 884, 887 (1977).
In United States v. Cash, 47 F.3d 1083 (11th Cir.1995), the Eleventh Circuit Court of Appeals outlined the factors necessary in determining the validity of a waiver of counsel:
"They are: (1) The defendant's age, educational background, and physical and mental health; (2) the extent of defendant's contact with lawyers prior to trial; (3) the defendant's knowledge of the nature of charges, possible defenses, and penalties; (4) the defendant's understanding of the rules of procedure, evidence, and courtroom decorum; (5) the defendant's experience in criminal trials; (6) whether standby counsel was appointed and the extent to which that counsel aided the defendant; (7) any mistreatment or coercion of defendant; and (8) whether the defendant was trying to manipulate the events of trial. [Fitzpatrick v. Wainwright, 800 F.2d 1057, 1065-67 (11th Cir.1986)]. All factors need not point in the same direction."
47 F.3d at 1088-1089.
The reasoning in cases involving the waiver of counsel also applies to waiver of the right to appeal. As the Alabama Supreme Court noted in Ex parte Dunn, 514 So.2d 1300, 1303 n. 2 (Ala.1987):
"The standards for waiver of appeals are somewhat unclear, because there is no `right' to an appeal under the Constitution, although once a state grants a non-discretionary appeal to defendants, the Fourteenth Amendment requires that the appellate process conform to the standards of due process and equal protection on the first such appeal. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Thus, on a first nondiscretionary appeal (i.e., a state `appeal as of right'), the Fourteenth Amendment establishes a right to counsel and a right to effective assistance by that counsel. Id. Moreover, waiver of this constitutional right to counsel on appeal must be `knowing and intelligent.' Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967). However, waiver of the actual appeal has been found to require a lower standard, because the appeal itself is not constitutionally protected. See Norris v. Wain-wright, 588 F.2d 130 (5th Cir.1979), cert. denied, 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979). As Norris indicates, however, some cases have spoken of waiver of an appeal as requiring `knowing and intelligent' action. Id. at 136, n. 3.
"We need not resolve this issue, because the evidence in this case allows the inference that the petitioner made a knowing and intelligent waiver of his right to appeal."
As a result of the trial court's frequent contacts with the defendant throughout the trial, and its extensive colloquy about these issues with the defendant on two separate occasions, this court and courts in the future called upon to review this case should be satisfied that Sibley not only knowingly, intelligently, and voluntarily, waived his right to counsel, but also his right to present issues to this court as it reviews his conviction and his sentence of death. The trial court correctly determined that when Sibley decided to forgo presentation of any issues in *244 the review of his conviction and death sentence he could appreciate his position and he knew that his life was at stake. Moreover, Sibley informed this court in a series of letters and motions dated July 4, 1995, July 28, 1995, and September 14, 1995, that he "withdrew" his appeal to this court. In an August 24, 1995, letter to an attorney who had been appointed to represent him on appeal, Sibley stated that no brief would be filed with this court.
In spite of the fact that Sibley sought to waive appellate review of his conviction and sentence, we have reviewed the case as required by the Code of Alabama and applicable caselaw, as discussed above.

II
Although Sibley did not challenge the sufficiency of the evidence presented at trial to support his conviction, we have reviewed the evidence in order to determine if the State met its burden. E.g., Clemons v. State, 720 So.2d 961 (Ala.Crim. App.1996); Carr v. State, 640 So.2d 1064 (Ala.Crim.App.1994).
The trial court, in an excellent sentencing order, summarized the facts as follows:
"The Defendant, George E. Sibley, Jr., and his common law wife, Lynda Lyon, lived in Orlando, Florida. In August 1992, the Defendant and his wife were arrested and charged with aggravated battery and burglary in a stabbing incident involving Lyon's 79-year-old former husband.
"They entered a plea of nolo contendere to these charges and a sentencing hearing was set for September 7, 1993. They failed to appear for sentencing. On September 10, 1993, the Defendant, Lyon, and her son fled the state of Florida knowing that a writ of arrest had been issued by the Court.
"On October 4, 1993, the Defendant was parked near Big B Drug in Pepperell Corners Shopping Center in Opelika, Alabama. Lyon was using a pay telephone outside the store and Defendant stayed near the car with the child.
"A passerby, Ramona Robertson, heard the child ask for help. Worried that the child was in danger, she kept an eye on the Defendant's vehicle as it moved to a different location in the parking lot near the entrance to Wal-Mart.
"As Sgt. Roger Motley of the Opelika Police Department came out of a store in the shopping center, Robertson reported to him what she had observed. Motley, a uniformed officer, had been running an errand for the police department. After the situation was reported to him, Motley approached the vehicle of the Defendant.
"At that point, the Defendant got out of the vehicle as Motley approached. Meanwhile, Lyon was using the pay phone near the entrance to Wal-Mart. Prior to approaching the Defendant, Motley radioed to the Opelika Police Department as to his activities with respect to investigation of this incident. A tape recording of those radio contacts was admitted at trial and played for the benefit of the jury.
"Motley approached the Defendant and asked for his driver's license. The Defendant stated that he did not have one because he had no contracts with the State. Motley then requested identification from the Defendant.
"At that point, the Defendant pulled a pistol from a concealed holster on his person and began firing at Motley. Motley attempted to get away from the Defendant and ran behind his vehicle for cover. The officer then began returning fire at the Defendant.
"Numerous shots were fired by the Defendant at Motley. The officer was able to fire his weapon three times at the Defendant.
"Meanwhile, Lyon heard the shooting and ran toward the patrol car. She pulled a pistol from her purse and began firing at Motley from his rear.

*245 "The officer was finally able to get into his patrol car and radio for help. The patrol car started to move through the parking lot in an erratic manner, hitting several vehicles as it moved prior to its coming to a stop near Big B Drug. Motley was mortally wounded.
"The Defendant, Lyon and the child then sped away from the scene.
"After a high speed chase, they were stopped at a roadblock on Wire Road in Auburn, Alabama. After a four-hour standoff, the child was released and the Defendant and Lyon surrendered to the police.
"A search of the automobile of the Defendant uncovered numerous weapons and large quantities of ammunition.
"After surrendering, the Defendant was taken to the emergency room for treatment of a gunshot would to his arm. While in the emergency room and after having been advised of his rights, the Defendant made an oral statement in which he stated he had shot the police officer. Another statement, which was reduced to writing, was taken from the Defendant at the police department in which he admitted shooting at the victim.
"The police officer had several gunshot wounds. The fatal shot went through his chest from the front at a slight downward angle. The fatal bullet was never recovered and tests were inconclusive as to which gun fired the fatal shot.
"The Defendant testified at the trial. He acknowledged shooting at the officer several times but claimed that it was done in self defense. The Defendant admitted firing three shots at the officer before the officer had drawn his police weapon. The Defendant testified that he was face-to-face with the victim at the time he fired his last two shots.
"At the time this incident occurred, the parking lot was crowded with vehicles and people. Twelve witnesses testified at trial as to being eyewitnesses to the shooting."
(C.R. 408-11.)
The State literally had an airtight case; hence, the State easily met its burden of proof on each and every element of the offense of capital murder, in that there was overwhelming evidence that Sibley had murdered Opelika Police Officer Roger Lamar Motley while Office Motley was on duty.

III
Because there can be no waiver of appellate review in a case involving the death penalty, pursuant to § 13A-5-53, Ala.Code 1975, we have reviewed the complete record in this case and have found no error. Because we have found no error in the guilt or sentencing phases in this case, we must determine whether death was the proper sentence. Ala.Code 1975, § 13A-5-53(b). Following our examination of the record, we have concluded that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. The trial court found two aggravating circumstancesthat Sibley knowingly created a great risk of death to many persons and that the capital offense was committed for the purpose of avoiding or preventing lawful arrest. (C.R. 411.) The trial court found no mitigating circumstances. (C.R. 412-13.) The trial court weighed the aggravating and mitigating circumstances and sentenced Sibley to death. Our independent weighing of the aggravating and mitigating circumstances convinces us that death by electrocution is the appropriate sentence. Finally, our review of similar cases in which the sentence of death was imposed convinces us that the sentence of death imposed upon Sibley is not excessive or disproportionate. See e.g. Carr v. State, 640 So.2d 1064 (Ala.Crim.App.1994); Harrell v. State, 470 So.2d 1303 (Ala.Crim.App. 1984), aff'd, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
*246 In light of the above, we affirm Sibley's conviction for the offense of capital murder and the sentence of death.
AFFIRMED.
All the Judges concur, except LONG, P.J., who recuses.
NOTES
[1] "Supp. R." refers to page numbers in the transcript denoted "Motion for New Trial Vol. I."
[2] "C.R.R." refers to page numbers in the clerk's record on return to remand.